Good morning, your honors. May it please the court. My name is Brent Boger. I'm an assistant city attorney with the city of Vancouver, Washington. I'm not going to re-argue the briefing. I think it's pretty clear what our positions are. I would like to address, however, the government's supplemental authorities and just make a couple of points about that. In this case, of course, the district court dismissed the city of Vancouver's challenge to the National Indian Gaming Commission in approval of a site-specific ordinance about 10 miles north of the city of Vancouver, and they did so based upon a restored lands opinion. In this appeal, we asked for remand to the district court with instructions to vacate the NIGC ordinance approval. Moving on to the two supplemental cases that the- Can I ask you first, what exactly is your complaint about the opinion? It seemed to wander some. At least initially, your problems seemed to be only the order. That is, that you couldn't have approval of the ordinance before the determination was made as to the trust, whether the land was to be taken into trust. The city's concern is the effect of that restored lands opinion on a process that the Department of Interior has. So that's not just a question of the order in which things were. It's that incorporated in the determination as to the ordinance was the general counsel's- So that's somewhat different than what began, as I understand it. Yes, but it was very intertwined with the argument in the district court and in the complaint that the city filed. I didn't handle the case below, so I had to learn the record of what happened below. But it was intertwined with it. And that is ultimately the city's concern that we would lose what's called Section 20 review and that it would make it very likely that a casino would be established. The two cases, the first case was a case from this court, an unpublished case, Casino 101. And it's hard to comment on that case because it's very sketchy at exactly what happened there. It's unpublished. We don't need to follow it. I don't know that it's worth it. You know, your brief says you filed a motion for summary judgment, and they filed a motion to dismiss. And the district court never reached the merits of the appellant's claim that the commission exceeded its authority by approving gaming on non-Indian lands. And that suggests to me that the thrust of your challenge to the order approving the gaming ordinance was that the lands had not yet been taken into trust. That is the underlying case, yes. But the way the restored lands opinion works is it acted as a substitute for the fact that it was not on Indian lands. This is the first site-specific or second site-specific ordinance that I'm aware of, and I think that's according to testimony of the acting general counsel of the NIGC that the National Indian Gaming Commission ever approved. Well, has the Department of Interior made some sort of a determination now that these lands will be restored lands? They have not. So we don't know. And the lands are not yet in the trust? They are not. Okay. So if the lands are taken into trust without some sort of a ruling that they are restored lands, then gaming would be subject to all kinds of other approvals? That's correct. And no one has said yet that although the commission and the general counsel of the commission has given their view on the restored lands issue, is it the Bureau that's the decision maker on the trust question? They haven't given any opinion yet. The Bureau could disregard the restored lands opinion. So what are we doing here? I mean, we don't know what's going to happen. Well, I think if you look at the case actually that the government cited, which I was going to comment on and actually concede that it is a pretty problematical case for our position. The D.C. Circuit. The D.C. Circuit case from Butte County, California. However, because it involves similar facts where the court declined to set aside, the D.C. Circuit declined to set aside the order of the restored lands opinion and the approval of the site-specific gaming ordinance. However, the case does illustrate the powerful impact that the gaming ordinance has. Well, but in that case, wasn't there a specific statement that the Bureau or the general counsel of the Bureau had looked at the opinion and approved it? In the Butte County case? Yes. Right. And here there's no such thing, right? I beg your pardon? And here there's no such thing? Not that I'm aware of, no. Right. So it's even weaker than that one in the sense that we have absolutely no indication that anybody at the Bureau has any opinion about this. Well, it's not weaker in the sense that it shows the powerful effect that the ruling has. And if there's a prior approval of it, but there hasn't been a prior approval of it here. That's correct. That's correct. But there are a couple of cases that we cited in our brief that point to preliminary determinations of agencies and their effect on subsequently approving agencies. One is Bennett v. Spear, where there was a biological opinion issued by the U.S. Fish and Wildlife Service for a Bureau of Reclamation matter, and there was standing recognized by the plaintiffs in that case to proceed. And also a case where the Department of Interior issued an opinion for involving the state of Montana in the approval process of a power plant, and even though the ultimate decision belonged to the state of Montana, the court recognized standing in that case as well. I was surprised that the whole argument seemed to be over standing, or at least the whole ruling in the district court. It seems to me almost everything it said really goes to ripeness. Well, the two doctrines are very related, as the government cites in its brief. Well, you could have a standing ruling that wouldn't go to ripeness. They could say, look, a nearby city just doesn't have any direct injury. It's not an actual injury, and you'd be out of luck on standing forever. I don't think that's what the district court said. It sort of said this is all in the future. Well, here's what the problem is. If the Department of Interior ultimately determines to take the land into trust and they have this restored lands opinion out there, and if the Butte County case is any guide, they're going to probably apply that restored lands opinion and it will ultimately. A, we don't know if they will. B, if they do, you'll have a case then. Except it will be a much more difficult case because there won't be any Section 20 review. Why? I mean, but you can challenge their conclusion. You're trying to challenge their conclusion now, and you can challenge it then. So what's the problem? The problem is, and the reason we're here, is because of Section 20. I understand that. But if your problem is not the order of things, but the fact that there is a restored land determination that you don't care for, I guess you don't like it, you think it's a bad one, right? Ultimately, what you're trying to do is challenge that restored land determination now on the merits. Is that what you want to do? No, we want to set aside a decision of the National Indian Gaming Commission of approving it. On the ground that what? They shouldn't have made the determination. That's right, because they approved a site-specific gaming ordinance, and as the government points out in its brief, there's nothing that prohibits NIGC from approving a gaming ordinance, but if they make it site-specific under the plain terms of the statute, it has to be on Indian lands. So ultimately, it is what you're really complaining about, is that not that you don't care for the merits of the restored land determination, but that they couldn't make the determination now before the Bureau makes the trust decision. I'm not sure I understand your question, Your Honor. Are you challenging now the merits of the restored land determination? No, we are not. We're challenging the effect of that restored lands determination on our Section 20 review rights, the potential loss of those. Okay. Do you want to reserve some time? I'll reserve time. Thank you very much. Good morning. This is Steve Miskinnis for the Federal Defendants in this case. All the injuries plaintiffs complain of, both those they raised in the original complaint, as well as the ones they've raised in their briefing for the first time on appeal, hang upon an agency action that's not yet been taken. And that agency action, which is the Department of the Interior's- Well, they have a complaint which relates to this agency action, which is they say you couldn't do this agency action until the trust land decision was made. And it seems to me that on that issue they probably can go forward and we probably do reach the merits, but the answer is probably yes, you can. But don't we have to reach the merits of that question? Why not? Why don't we have to reach the merits of the question of whether or not the NIGC was entitled to go forward without first having a determination as to whether the land was going to be taken into trust? Because there's no standing to raise that issue. Why not? Because the plaintiffs aren't injured by that decision. Approval of the gaming ordinance is basically a matter between the tribe and the National Indian Gaming Commission.  And more importantly, absent any gaming facility for that ordinance to govern, there's going to simply be- there's no concrete application of it. So the plaintiffs have no source. There's no injury that they can trace back to. Are they ever going to be able to challenge that? I'm sorry? Are they ever going to be able to challenge that? Gaming ordinances have been challenged before. You can challenge that. In the View County decision, the plaintiffs were able to bring a challenge both to the gaming ordinance as well as the- So why can't they challenge the approval of the gaming ordinance now? Because the View County plaintiffs waited until the Department of Interior took the land to trust. At that point, the injury from gaming was much more imminent and it was not contingent at an uncertain date in the future. And moreover, in View County, the target there was the actual restored- the restored lands opinion for both of them. And the plaintiff was arguing that the substance of those decisions with regard to Indian lands was arbitrary. They just had new evidence. They thought the decision was- But suppose the statute did say that much- in hank verba, that after there's a determination as to whether the lands are taken into trust, the National Indian Gaming Commission can look at the ordinance and decide whether to oppose the ordinance. Suppose that's what the statute said. And that wasn't what was done here because, in fact, they didn't wait until there was a determination as to taking the land to trust, but they decided it first. How would you ever get review of that? The result being that there was an ordinance approved that shouldn't have been approved. What would be the point at that point for waiting until the second thing happened? Well, if there was such a statute, depending on how the decision was made, if it's a standing question, the tribe would have the ability to challenge it. If it was improperly made, it would be right at the time that it had some effect, so it would be subject to review after the- One thing that was fairly vacant in your brief was any agreement that, in fact, this is challengeable, both this is challengeable and any impact of the restored lands determination will be challengeable after, if and when the land is taken into trust. Do you agree that that's true by the city of Vancouver? Yes, I mean- But your brief never says that. It skirts and skirts and skirts and doesn't say it. Well, for one thing, it could be subject to challenge. When a complaint is filed in that context, obviously as a Department of Justice lawyer, we have to look at it and see do we have defenses and we assert them. But that said- But you're not going to argue later on that because they didn't challenge it now, they can't challenge it then? No. No, that's right. But when the land is taken into trust, the Department of the Interior, one of the factors it has to do pursuant to its land of trust regulations is consider the purpose for which the land is to be taken into trust. And in that context, the purpose here, according to the trust application, is gaming. So the department has to determine and will make a determination in that context of whether or not the lands are gaming eligible if taken into trust. And so that would be part of the- if a suit challenging the land of trust decision would be able to challenge that too. And in that context, courts have found in Tomac and the D.C. Circuit, as well as another case, SeaTac, that files from it, that just as the plaintiff's city is claiming here, the section 20 determination in that context will give a plaintiff standing because there's another provision of section 20, which is the consult and concurrence portion, which a party challenger can say, well, we were denied- they can make the argument that Mr. Boger is making now, but in the context of the land of trust decision- Well, you mean a failure to consult? That's a little different. I mean, they might consult them and say, well, the city opposes this, and then they go ahead and do it. They're consulted. I suppose if there's no root under section 20, the city might claim it's a person that grieved and bring an APA action to challenge the decision of the department to take it into trust if- you seem to be saying that taking it into trust would encompass a restored lands decision because- You're right, because the department can only take the land into trust if it has to consider the purpose. I suppose they can take it into trust for the purpose of gaming without ruling that the lands are restored lands, and then there would have to be another decision made because if it's in trust but not restored lands, they can still try gaming, but the state can veto it and there are all kinds of restrictions. Right, there would be other problems at that point, such as a no legal gaming operation. I'm just wondering, I think a little bit as Judge Berzon is, how does the city at some point get to challenge a restored lands decision which would permit gaming without any real veto by the state? I guess what I'm answering is that typically what the department does is part of its analysis for the land of trust. It has a set of factors that the department considers, the need of the tribe for the land, the effects on local jurisdiction. These are under a different statute that really hasn't been mentioned before the court today, but that would be in play in a land of trust decision and one of those is the purpose of the land. So the tribe has to identify what the purpose they're going to use the land for. So if the tribe says gaming, then the secretary, subject to an arbitrary and capricious standard under the APA and its own regulations, has to look into whether or not the agency action of taking the land into trust will support, we can take it into trust to meet the purpose of the tribe. Otherwise, the agency, that becomes a factor against taking the land into trust. And that's what happened in Butte County. The decision was made prior to the land being taken into trust because otherwise you could see that there would be a kind of a, you'd be in exactly that uncomfortable position. The department is now saying, okay, we're taking, assuming the obligations of fiduciary, we're taking title to this land, but we haven't gone through this two-part determination, which involves seeking out the concurrence of the state as well as canvassing and consulting with local tribes and communities. And so we don't know, you know, because the state at that point has veto power. The state could say, we're not going to concur. So the state would have authority to stop gaming. So it would be, I guess what I'm trying to say, a very awkward position for the U.S. and stupid position for the U.S. to get itself in, where we now have land into trust for the purpose of gaming, but we don't, we can't say whether or not they can game on it. So that would be a contingency that's in the department's interest to work out to the best they can before it goes ahead and assumes all the obligations and responsibilities that the federal government is going to assume when it accepts this land into trust. So that's what I'm saying. That injury would get resolved there most likely. And same with the NEPA, because their other injury, their other argument is that they're being prejudiced by the ordinance itself with regard to what they see as the need for supplemental EIS. And, again, there's no NEPA process in the approval of a gaming ordinance. So, again, the city is talking about a process that's intricately tied up to it and that has to be done in the context of a land to trust decision. It's a major federal action. So if there is a violation, they'll have that NEPA argument at that time. So, I mean, in some sense, it's not even a question of whether or not they'll eventually be able to challenge this gaming ordinance, because the merits of their challenge is even that we don't want to see it approved until after the land's into trust. So once the land's into trust, in some sense, according to Planner's own view, their specific gripe against it is moot. The things that the plaintiffs are complaining about is, in the main, there's going to be a casino coming someday, and the casino will not be as remote and speculative as once a land to trust decision is issued. And, in fact, there's a host of case laws, as regular courts say, you have standing to attack the decision to take the land into trust and try to stop it at that point, as the plaintiffs did in Butte County. And same with the complaints. And with regard to the restored land decision, if unlike in Butte, there was no express concurrence by anybody in the Bureau, including General Counsel, in the restored land decision. Is that right? Right. There is this memorandum of agreement from 2007, which seems to say they're supposed to share or agree to each other's determinations in this regard, but it doesn't seem to have happened here. Is that right? That's right. It didn't. But if the Bureau, in its eventual land to trust decision, or land into trust decision, says with regard to the restored lands determination that simply we agree with what the solicitor to the NIGC said, that's still going to be reviewable at that point. Of course. On the merits, completely. Absolutely. That would be a concurrence to which a plaintiff could write up a claim saying, okay, look, that reliance was ill-founded because the decision was arbitrary and capricious. Therefore, the Secretary's consideration of the purpose for gaining was arbitrary and capricious. And the decision wouldn't be any different than it would be now. I mean, the level of review, there wouldn't be any difference or anything to the fact which is essentially what Butte County held. Yeah. It has to be true for you to be right because of it. I'm just not sure I understand the deference. It couldn't be that the review of the land, the restored land determination on the merits would, if adopted by Hull-Hogg without any independent reasoning by the Bureau, would still be complete plenary review. I mean, I understand it's arbitrary and capricious review because that's what it is anyway, but no different than if it were reviewed now. Right. That seems right. If I'm taking you right, there wouldn't be an availability to say that this somehow, the reasoning of this restored land has accrued some additional deference via the passage of time. Right. That's what I mean. Or because it was approved by the General Counsel and by the NIGC, and so we are entitled to just believe what they said or anything like that. Well, they are entitled to do that, but, again, it would still be challengeable. I mean, that's what happened in Butte County. Right. That's what I meant. There's no stratagem, at least that I'm capable of figuring out, by postponing review here in order to gain a litigation. It really would have been. I think the case might even have gone away, but at least it would have been a lot easier for me, us, if you had said this. I mean, your brief seemed to have been written with an eye to never quite saying that, and, therefore, it created some amount of concern about whether, even though it seemed inevitable that what you're now saying has to be true, it's not in the briefs. That's fair enough. The other side, though, is that when the complaint is filed, obviously, you know, we have to be able to. I'm talking about the briefs before us. What's that? I'm talking about the briefs before us. No, I know, but I'm saying in the briefs we're uncomfortable with saying, oh, they have standing to bring this down because I can't make that representation. I understand that, but there's nothing about the passage of time that's going to make a difference. That's correct, but, yeah, in terms. Anyways, I take your point. The brief could have been constructed better, but in terms of Your Honor's concern, yes, I don't see that plaintiffs are prejudiced by the fact that they can't challenge this gaming ordinance because it has no application right now. And, in fact, to make my point again, their concerns with this gaming ordinance all flow towards the land of trust decision, and they will have the opportunity to challenge those things then. And the early arrival of this gaming ordinance does not, in some way, prejudice their ability to challenge that land of trust decision later on. Okay. Thank you very much. Good. Good enough. Thank you, Your Honor. Next. Fifty-two seconds. Go ahead. Your Honor, put your finger on the point, and if we had gotten a statement from the government that the restored lands opinion would have no weight or little weight, we probably wouldn't have. Well, it might have weight, but it won't have any legitimate weight, meaning that if the Bureau chooses to simply follow it, you will get as much review then of it as you would now. Especially under the new D.C. Circuit case that has come out. Just a couple other points I'd like to raise. Nowhere in the government's argument did they suggest that if the city did lose Section 20 review, that it would not be harmed. Clearly, it would be. And onto the NEPA issue, the 2007 ordinance was actually an amendment to avoid preparation of a supplemental EIS because the EIS provided for mitigation under a memorandum of understanding with Clark County that has been set aside by the Washington Growth Management Hearings Board. Thank you very much. Thank you.
judges: Canby, Noonan, Berzon